Next case this morning is Weaver v. Champion Petfoods number 20-2235 Good morning counsel Mr. Shirker, I see your Podium there, but we can't see you There you are good morning Good morning Ms. Peterson Ms. Peterson, you've reserved five minutes for rebuttal. So whenever you're ready, please Thank you, your honors good morning your honors Rebecca Peterson on behalf of plaintiffs about Weaver This case raises the question of what is the proper analysis a district court should do at summary judgment? When faced with a false labeling case and here those specific claims were pled under Wisconsin law the district courts order should be reversed because it failed to do the proper analysis for summary judgment as court's decision in sterling foods It also refused to apply the reasonable consumer standard as this court recently set forth for clarity on in the Bell decision instead the district court cherry-picked facts and assumed as a matter of Decided as a matter of law issues that should have gone to the jury It also failed to apply the reasonable consumer standard when it was when it helped as the plaintiff's Interpretation of the alleged misrepresentations was absurd and it engrafted requirements under the Wisconsin deceptive trade practices act that Simply go against the very purpose of that statute when it held that the requested relief was extraordinary In the end the district court simply adopted the district the defense counsel's offered alternative interpretation As to what the challenge misrepresentations could mean and it did not consider what a pet parent would reasonably expect when buying a $90 bag of dog food that Markets itself and promises all over the bag superior quality Under your argument, Miss Peterson even if only fresh locally sourced meat had been used in the dog food with the representation that it was Biologically Appropriate be misleading and actionable Because of the possibility that trace amounts of EPA present in the environment could end up in the dog food Yes plaintiff's theory here is because there is a substantial risk a real risk of BPA in And that it promises that it's biologically appropriate which it ties specifically to natural and nourish as nature intended that the inclusion of And the risk of BPA in the dog food does render the biologically appropriate statement Misleading even if the all the meats were fresh now You don't allege that either BPA or pentobarbital was present in the dog food and any amount that could be safer on farm or or harmful in fact You don't even face The rep the representations appearing elsewhere Yes, that is correct your honor what we do allege is that the the we allege that testing shows that it is in and it has been in the specific diets purchased by plaintiff and that a reasonable consumer would care about the inclusion because of the known risk of Harm for BPA. We do not allege actual injury to Scott Weaver's dogs at that point was Jack and Jill That was that they had to go see a vet because they consumed BPA instead It's whether or not this is what plaintiff Weaver testified to that he would not even have purchased the bag if he knew there was a risk of BPA Because he wouldn't want to put that risk in front of to his dogs This is a summary judgment here in the court ruled on summary judgment And the lab results that you reference show that none of the dog food that your client purchased Namely the origin brand contained detectable amounts of BPA So, how should that impact our analysis? Thank you, your honor. I the original testing that we did that was included in the complaint did show that the diets purchased by plaintiff Weaver had Detectable levels of that's not what the lab results that were submitted at summary judgment showed and I'm looking at record number 148 Dash 15 to be specific the lab results Showed that none of the dog food that your client actually purchased contained detectable amounts Right. I mean you were arguing that I mean your theory is Well, I think your theory is that champion failed to disclose that there was a risk RISK of BPA or pentobarbital that Yes, that is exactly correct. Well, but there was a lot of problems with that aren't there? First, I mean even if we consider the claim That the dog food is biologically appropriate to be a factual representation as opposed to puffery Which is you know, we'll put that on the side the Packaging itself provides definition to the term by stating that it is a diet. Let me see It is a diet protein rich and carbo Hydrated Carbohydrate Limited and and then it lists the meat I mean seems to me that at best the term biologically appropriate in the context of the package we understood is promising the inclusion of such meat and fish in a composition that would be protein heavy and the mere risk that trace amounts of such substance in a quantity Could neither be harmful or safe could be present the product can't render That term Biologically appropriate misleading. I don't think Thank you, your honor, I would like to point to exhibit 158-18 which is champions own document where they Specifically state that they assure pet lovers. There is no health risk To their to their dogs and the reason why they're talking about health risk here is how they're trying to In their dog food, so at this point at summary judgment, there are there is evidence that Should go to a jury and the weight and credibility because champions own internal documents based on their you know marketing research Even an issue of fact that BPA was in the dog food that your client purchased And putting that aside, but I want to take just one step back please miss Peterson It Was there any evidence at summary judgment that a reasonable consumer? which is what the test is here would interpret the phrase biologically appropriate on the dog food as certifying that the dog food is completely free of BPA Other than your clients own testimony Was there any evidence that a reasonable consumer would interpret it that way? the evidence for BPA would also include the document which I just referred to which is not an actual survey to consumers But it's defendants Statement that but it's not directly How would that support? How a reasonable and consumer would interpret? Biologically appropriate and specifically to go to your argument How would that support that a reasonable consumer would interpret that phrase as Meaning that the fruit food was free of any BPA Including what you could pick up in the environment Hey, thank you your honor And so the other evidence I would say is we had the survey which is on appeal here But your survey went to damages you submitted the survey for the purpose of damages This is a question of liability and a question of what a reasonable consumer would interpret which is is the test Under the statute that that you're pursuing here. So I'm I please identify for me if I have missed something I'm trying to figure out what in the record would support other than your clients own testimony Which I don't think is sufficient under the law. What would support? Your argument that a reasonable consumer would interpret Biologically appropriate as certifying that all of the food is free of BPA including what you might pick up in the environment Your honor I would also say that the testimony from Peter Mullins Oh when he was asked what biologically appropriate meant and what? And also their marketing Julie Washington when she was asked about biologically appropriate they testified that it's a consumer Facing forward message that and Peter Mullins will testify that it means as per as close to perfect food as possible Either one testified that that representation was meant To represent that it wouldn't have any BPA what you could just pick up in the environment Yes, your honor, but it's correct. No directly testified as to that but as in they stated in the birds all case Consumer survey isn't always required. It can also come in It's not always required but I'm trying to figure out what what it was submitted to support it here No, no, no, no, I talked over you Okay, I don't mean to interrupt no, go ahead, please So, yes, there is you are not missing any additional evidence That's what we have for biologically appropriate as to whether or not it would be misleading We also have the various documents internal documents at champion saying that Biologically appropriate is a message that's clear and that it drives its sales and it means natural dog food. And so we don't Know I'd like to go a little further for a moment, please weavers Provided no support for an argument that there is an obligation To disclose the mere risk of such substances. There's no allegation that champion use such substances in Producing the dog food the suppliers Of its packaging maintain that the packaging was BPA free and As I recall when champion, let's see when champion was testing And the testing indicated The presence of pentobarbital in one ingredient that it did use in its dog food Champion took action to address the issue and its actions were in compliance with the FDA. I mean How have you demonstrated that BPA or pentobarbital Pentobarbital I guess is present in Champions dog food in an amount that could render the term biologically appropriate deceptive Thank you, your honor first I believe you started off with talking about intention and that somehow champions intention Into including an ingredient actually comes into play under the Wisconsin Deceptive Trade Practices Act And that's just not a consideration as to there's nothing about intending an ingredient It's whether they're intending to Induce based on the misrepresentation here and biologically appropriate the evidence is clear champions Statements are clear that biologically appropriate drug sales now as to what we have to show that there was an actual health risk at I will You're correct we don't have anything our case was about the risk and if this court believe risk is not sufficient enough I would like to move on to because my time is getting quite short as to the other misrepresentations as to fresh and original but I would I would say that we did allege risk and That is our theory. That is what the evidence for BPA and pentobarbital addresses. It does not address a specific level The district court also found not only that BPA was and pentobarbital Were not viable claims But he also found that the promises of fresh and regional on the dog food bags We're not misleading because champion didn't never promised a hundred percent fresh or regional and that they use some Ingredients the district courts order. Yes. Well, I'm sorry. I missed a word they used What ingredients did you sell some fresh or some? Sorry So at that point the district court held that because they use some That they cannot be misleading as a matter of law this first Ignores the law that something can be true and still misleading. Do you agree that it does contain some fresh ingredients? Yes, there would be some though champions own Pleadings at this point it makes me unsure of that because they said they gave more information that it depends on the season what's available and so There I would assume there's some though the champions own Declaration says well, it really depends on the season as to when things are available and the ingredients It's pretty clear that the evidence showed that it contained Some fresh ingredients. Let's assume that I think you started to agree to that initially, but let's assume that My question to you is the same here as on the BPA what evidence was submitted that a reasonable customer would believe that the representation meant that the ingredients were 100% fresh as opposed to just containing fresh Well, your honor this the district court failed to Say that the bank says fresh or regional and yes plaintiff's testimony said unless it's disclosed Otherwise, you would assume fresh ingredients for instance, but I'm sorry, miss Peterson and you're into your rebuttal time But my question was not what the district court did But what evidence did you put into the record other than your clients own? Testimony that a reasonable consumer would interpret the representation to mean the ingredients were 100% fresh We have the Champions own documents saying that fresh is Misleading and explaining to their employees when fresh can or cannot be used because otherwise it is not They're misleading and also we have these surveys specific corrective statement that says fresh if If it says fresh, but it uses frozen ingredients, so we have various documents you are into your rebuttal time You are into your rebuttal time. Miss Peterson if you want to save some Yes, I would like to thank you. Okay much. Thank you Mr. Shirker We Can't hear you. Mr. Shirker. You're on mute if you would unmute it, please Thank you, terribly sorry I'm still doing this. That's that's okay. We all are Thank you Elliot Shirker on behalf of champion But this court said in Beardsall is that the problem with the plaintiffs case on summary judgment was quote Plaintiffs have not presented any actual evidence that the label is likely to mislead consumers about their nature or quality of the product Plaintiffs need to offer evidence that reasonable consumers were likely to be misled in a material way Excuse me for a moment. The clock is not working. Thank you All right, what if you would start over please now we have the clock going did you mind starting over Yes, your honor Plaintiffs have not presented any actual evidence that the label is likely to mislead consumers about the nature or quality of the product And the court continued plaintiffs need to offer evidence that reasonable consumers were likely to be misled in a material way as to each and every one of Plaintiffs claims about our dog food this analysis applies starting first with BPA The undisputed material facts are that BPA is ubiquitous in the environment. It's found in human and animal diets It's found in dust and air There are varying amounts found in many dog foods including in only one test some of champions dog with champions dog foods Although subsequent tests showed there was none detectable in our dog foods at five parts per billion Including the diets that mr. Weaver bought plaintiffs plaintiff agrees as we heard this morning that the BPA found in dog is not harmful to dogs The district court ruled because BPA is in the environment But it's not harmful to dogs at the level found in the dog food the mere potential presence in champions for dog food does not make biologically appropriate a lie based on the undisputed facts that's entirely correct a Ubiquitous but non-harmful levels of BPA and dog food does not turn biologically appropriate dog food into biologically inappropriate dog food And therefore there is nothing misleading about the statements Biologically appropriate the same is true. Although for slightly different reasons as to pentobarbital Weaver's claim is based on unborn is speculation the pentobarbital might have been present in dog food that he purchased before October of 2017 when the only actual evidence is the pentobarbital Appeared in two lots of the beef towel towel from one distributor in March of 2018 in that month One of champion suppliers delivered two lots of beef towel towel that contains small amounts of pentobarbital Champion quarantined all the unused portions of the affected towel of the 1.7 million pounds of dog food that was manufactured Using the affected towel all the 100,000 pounds were retrieved by champion Testing of composite samples taken for the food products made with the affected towel showed non-detect results for pentobarbital The FDA approved our handling of the affected towel including our decision not to recall the 100,000 pounds and determined That no other action needed to be taken all weaver offers as we've heard this morning It's bare speculation that there might somehow have been pentobarbital in the dog food that he purchased District Court correctly ruled if I might quote from this passage of the order Without evidence of pentobarbital's presence in prior shipments Weaver cannot credibly allege that the products he purchased at a detectable level of pentobarbital or a meaningful risk of sexual As to fresh and reasonable this court said in bill I need to have third at 477 we stand by the general principle that deceptive advertising claims Should take into account all the information available to consumers and the context in which that information is provided in use The district court did exactly that Quoting from the order when the dog food packaging is viewed in full It is clear that some ingredients are fresh raw or dehydrated Some ingredients are frozen or freeze-dried and then at least several pounds are not fresh ingredients Which disposes of weavers objections based on the alleged inclusions of? refresh ingredients other not fresh ingredients weaver himself testified at frozen ingredients were not a problem for him and the Delivered fresh or raw our raw ingredients are frozen as mr Mühlenfeld explained in his deposition if you walk into a pet store and ask for the raw food They're going to point you to the frozen food counter. So our food was either delivered fresh or raw From to our kitchens where it was made in our kitchens and never outsourced as to regional we use regional suppliers That's undisputed the packaging included statements as to what's best to what context was for regional I might add as to the six fish diet that mr Weaver bought it discloses that the fish came from the Atlantic Ocean and certainly not from Kentucky and no one could have been misled Forgive me. I have a question Even if the term regional or regionally sourced had a rather Expansive meaning that was clear on the face of the packaging Is it equally clear that the meaning would extend to a far-flung location like New Zealand In other words, how can we say as a matter of law? that the packaging was not deceptive if it promised regional sourcing and used product from countries such as New Zealand We did use products from New Zealand that's expressly laid out in in the Milam declaration that that's correct your honor But we don't guarantee 100% regional This is not Bell with a guarantee was 100% created natural grated Parmesan cheese We represent that we use regional ingredients and indeed we do use regional ingredients and when they can't be sourced regionally We source them from other places. That's correct We do why wouldn't mr. Weaver's Testimony that he interpreted this as meaning 100% regional raise an issue of fact Because it doesn't make any sense he bought six fish which said it came from the Atlantic Ocean He knows that the six fish didn't come from, Kentucky So he understands that regional doesn't necessarily mean Kentucky. Oh, what does it mean? New Zealand and forgive me, but in in addition to New Zealand and Canada Weaver states that champion used products from the European Union Norway China Latin America Do you dispute that contention? And if so Precisely, which countries were sources All of that was laid out in the documents of discoveries which which references made in The declaration in the statement of material and disputed facts to which your honor is referencing And yes There are bills of lading and other documents that occasionally we did purchase ingredients from all the places that your honor listed that That is correct, and we don't dispute that but that is that it has happened Our Argument on the diets that mr Weaver purchased is we we explain exactly where each ingredient came from and where we source those ingredients They're sourced almost entirely from the United States. We represent on the back of our bag. That is to these products our Inspiration and source is either the the vast unspoiled lands of America That's for the dog star food or the vast unspoiled lands Canada for the North Star Which is where the North Star food is made is made indeed, but we don't think of 100% of it is We don't say that anywhere on the back We actually say on the back that 11 pounds of the 13 pounds are fresh raw or or dehydrated As the district court ruled that's two pounds of at least two pounds unaccounted for and tells me and tells the purchaser That those 11 pounds, yes, but those other two pounds are not guaranteed And as mr. Weaver I return to the six fish. He understands that regional doesn't mean Kentucky and That's where if you look at mr. Milam's declaration, you'll see that this is in the record at document 148-9 That as to almost all of the ingredients in these two diets They were they were from the United States and was delivered either fresh or raw to the to the kitchens for production So the the representation of fresh and regional As the representation for fresh and regional mr Weaver presented no evidence that it was going to mislead a reasonable consumer as it was presented on the bags and Deceptive for deceptive label based on the fresh statements. I'll rely on my brief on the dog radish. We must afford is any questions on that issue Thank you. One question. Yes, sir. Simple is What's the current status of the packaging? Is there any alteration in the ingredients or when they refer to? Freshness, etc. Or is this the status quo that's been there and it's not any different than in the past In other words, the same packaging is now as it was Let's say a year or two ago Runner for what the record discloses. These are the packages that we have been using I don't know if any of the changes have been made since this lawsuit was initiated, but we're very comfortable and relying on this package Thank you very much, thank you You You're muted miss Peterson, all right Thank you. I can address the question is to any change on packaging There is no disclosure at the bottom of the bag that says that they are globally sourced or internationally sourced Ingredients also included in the bag. That is the one change that I have seen I didn't want to quickly Touch base on the issue of fact questions that were raised one that I do want to highlight is for fresh they are very very Dependent on the fact that raw is separate and fresh and that everyone would understand that our tests are Plenty of testified that raw would still be fresh their own documents show that raw would be fresh so whether fresh and raw are the same or Different is an issue of fact and that does play Into their defense as to why fresh is not misleading I would also say that Weaver did testify that he knew when buying six fish that the fish From New England, but he said because they disclosed that and they did not disclose all the other ingredients that were non-regional He would assume they would be coming from the region of Kentucky The The other statements on the bag where They say fresh and regional without a disclosure I think is critical here because as Bell said it's the overall impression of a shopper going to a grocery store and They don't have to parse the label and if you look at the disputed facts Between 16 and 20, you'll see all the other statements that we put in word Champion talks about fresh or regional that the court just didn't consider they considered the one disclosure on the front bottom of the bag about raw fresh or dehydrated and So how this how a consumer buying this bag? would interpret it should have been considered as the bag in general and not just the The defendant's view the defendant's interpretation which Bell prohibits and finally I Would say the evidence here is not so one-sided that plaintiff's understanding is absurd If you say fresh 15 times 23 times, is it absurd? To think that a hundred percent of the ingredients are fresh unless they're disclosed. There's not a mention of expired ingredients There's not a mention of rebrands and that should have gone to the jury. That is not a matter of law in plaintiffs opinion To call to make the call as a matter of law. And finally the survey even though it was Kicked out at top air. It shows consumers care because they would not have Decreased the value of the dog food if they didn't think it mattered and thank you your honors. Thank you for the time Thanks to both counsel the case will be taken under advisement Thank you